### Court of Sessions, June Term, 1823.

The People *vs.* James Ward.   *Grand Larceny.*

*Maxwell, District Attorney,* for the prosecution.
*Price* and *M'Ewen,* for the prisoner.

The prisoner was indicted for a Grand Larceny, of the goods and chattels of John Peters, on the 24th day of May, 1823.

On a trial for a felony, the court of sessions have no power to discharge a jury but in extreme cases.

After the charge of the court, the jury retired to consider their verdict, and after being out nearly all day, returned into court without being able to agree upon it ; they were again sent out by the court with instructions to agree upon their verdict.   They returned again at 12 o'clock at night, without being able to agree, or a *probability* of their agreeing.   They were again sent out by the court.   The court after a reference to all the authorities, decided, that they had not the power to discharge them except in extreme cases, and referred to Goodwin's case,* decided before Chief Justice Spencer, on habeas corpus, (see Sampson's report of Goodwin's trial ard Olcott's case, 2 Johns· Cases, p. 301.)   The court fully recognised the law laid down in the above cases.

NEW-YORK,     The jury after being out twenty-seven hours, returned with a verdict of guilty against the prisoner.

*NOTE,

*Supreme Court, August Term,* 1823.

The People
vs.          } *Motion to discharge.*†
Robert M. Goodwin.

Statement of the case. "*Spencer Chief Justice.* A motion has been made to discharge the defendant on the ground that it appears by the return to the certiorari that he has been once tried, and cannot, therefore, be legally tried again. He was indicted in the sessions of New York for manslaughter ; the trial continued for five days, and the jury having received the charge of the court, retired to consider of their verdict ; were kept together seventeen hours, and declaring there was no probability of their verdict, were discharged after eleven o'clock, on the last day which the court could sit. It appears that the jury had in the mean time, between their receiving the charge of the court and their discharge, come into court, and on being asked if they had agreed on their verdict, answered, through their foreman, that they had agreed, and that they found the prisoner guilty ; but recommended him to mercy ; but on being polled, the third juror called upon declared his disagreement to the verdict.    These are all the facts material to be noticed in considering the present motion.

No person can be twice put in jeopardy of life and limb for the same offence. "The defendant's counsel rely principally on the fifth article of the amendments to the constitution of the United States, which contains this provision : "*Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.*" It has been urged by the prisoner's counsel that this constitutional provision operates upon

†See Johns. Rep. p. 187.

the state courts *proprio vigore.* This has been denied on the other side. I do not consider it material whether this provision be considered as extending to the state tribunals or not ; the principle is a sound and fundamental one of the common law, that no man should be twice put in jeopardy of life and limb for the same offence. I am, however, inclined to the opinion, that the article in question does extend to all judicial tribunals in the United States, whether constituted by the congress of the United States or the states individually.

"The provision is general in its nature, and unrestricted in its terms; and the sixth article of the constitution declares, that that constitution should be the supreme law of the land ; and the judges in every state shall be bound thereby, anything in the constitution or laws in any state to the contrary notwithstanding. These general and comprehensive expressions extend the provisions of the constitution of the United States to every article which is not confined by the subject matter to the national government, and is equally applicable to the states. Be this as it may, the principle is undeniable, that no person can be twice put in jeopardy of life and limb for the same offence.

"The expression *jeopardy of limb* was used in reference to the nature of the offence, and not to designate the punishment of an offence ; for no such punishment as loss of limb was inflicted by the laws of any of the states, at the adoption of the constitution. Punishment by the deprivation of the limbs of the offender would be abhorrent to the feelings and opinions of the enlightened age in which the constitution was adopted ; and it had grown into disuse in England for a long period antecedently. We must understand the terms *jeopardy of limb* as referring to offences which in former ages were punishable by dis-

Meaning of the terms "jeopardy of limb."

NEW-YORK, membement, and as intending to comprise the crimes denominated in the law of felonies. The crime of manslaughter is undoubtedly a felony ; and therefore the prisoner is entitled to the protection afforded by the article of the constitution, whether we regard it as binding upon us by its own force, or as an acknowledged maxim of the common law.

" The question then recurs, what is the meaning of the rule that no person shall be subject for the same offence to be twice put in jeopardy of life and limb ? Upon the fullest consideration which I have been able to bestow on the subject, I am satisfied that it means no more than this; *that no man shall be twice tried for the same offence.* Should it be said that we can scarcely conceive, that a principle so universally acknowledged, and so interwoven in our institutions, should need an explicit and solemn recognition in the fundamental principles of the government of the United States, we need recur only to the history of that period, and to some other of the amendments, in proof of the assertion that there existed such a jealousy, or extreme caution, on the part of the state governments, as to require an explicit avowal in that instrument of some of the plainest and best established principles in relation to the rights of the citizens and the rules of common law. The first article of the amendments prohibits congress from making any law respecting an establishment of religion prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and petition government for a redress of grievances ; the second secures the right of the people to bear arms ; and, indeed, without going into them minutely, nearly all the amendments of that instrument indicate either great caution, in

defining the powers of the national government, and the NEW-YORK, rights of the people and the states, or they evince a jealousy and apprehension that their fundamental rights might be impugned, so as to leave no doubt that in the article under consideration, no new principle was intended to be introduced.

" The test by which to decide, whether a person has been once tried, is perfectly familiar to every lawyer, it can only be on a plea of *auterfoits acquit*, or a plea of *auterfoits convict*.

" The plea of a former acquittal, Judge Blackstone says, (4 Com. 335.) is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of life more than once for the same offence ; and since, he says, it is allowed as a consequence, that where a man is once fairly found not guilty upon an indictment in another prosecution before any court having competent jurisdiction of the offence he may plead such acquittal in bar of any subsequent accusation for the same crime. The plea of a former conviction depends upon the same principle, that no man ought twice to be brought in danger for the same crime. To render the plea of a former acquittal a bar, it must be a legal acquittal by judgment upon trial for substantially the same offence by a verdict of a petit jury. 1 Chitty C. L. p. 372.

" In the present case it is not pretended that the prisoner has been acquitted, unless the discharge of the jury without having agreed on their verdict, and without the prisoner's consent, shall amount in judgment of law to an acquittal. This brings us to the question whether the court of sessions could discharge the jury under the circumstances of

Plea of auterfoits acquit.

Hawk. c. 2. c. 35. § 1. Chitty, C. L. vol. 1. p. 368, 369. The King v. Wildey, 1 Maul.& Selw. Rep. 183. The King v. Vandercomb et. al. Leach, 826. 828 Bull. Nisi Prius, 245. 3 Mod. 194. The King v. Cogan Leach, 503. Com'th. v. Cunningham, 13 Mass. Rep. 245. Com'th. v. Goddard, ibid. 455. City Hall Recorder vol. 2. p. 44. Ibid. 73. 1 Johns. Rep. 66. 13 Johns. Rep. 35. Of auterfoits convict, 4 Bl. Com. 336. Hawk. b. 3. c. 36. § 1. 9 East, 441. Leach, 445. The King v. Maddock, Str. 1100, Goddard et. al. Lord Raym. 721. 3 Salk. 171.

NEW-YORK, this case. If they could not, then I should be of the opinion that although there could be no technical plea of autrefoits acquit, the same matter might be made in arrest of judgment; and if so, I can see no objection to the discussion of the question in its present shape, on a motion to discharge the prisoner.

The discharge of the jury in criminal cases must rest with the court, under all the particular or peculiar circumstances of the case.

" In the case of the People v. Olcott, 2 Johns. cases, 301, all the authorities then extant upon the power of the court to discharge a jury in criminal cases, and the consequences of such discharge, were very ably and elaborately examined by Mr. Justice Kent, and it would be an unpardonable waste of time to enter upon a re-examination of them. In that case the jury, after having remained out from eight o'clock on Saturday evening, until near two o'clock the next day, and having in the mean time come into court two or three times for advice, declared there was no prospect of their agreeing in a verdict, and were discharged without the consent of the prisoner ; one of the questions was, whether the discharge of the jury entitled the defendant to be discharged, or whether he could be re-tried. After examining and commenting on all the authorities, the position of the learned judge was this, " If the court are satisfied that the jury have made long and unavailing efforts to agree, that they. are so far exhausted as to be incapable of further discussion and deliberation, this becomes a case of necessity, and requires an interference," He observes, " all the authorities admit, that when any juror becomes mentally disabled by sickness or intoxication, it is proper to discharge the jury ; and whether the mental disability be produced by sickness, fatigue, or incurable prejudice, the application of the principle must be the same." Again, he observed, " every question of this kind *must rest with the court under all the particular or*

See the following authorities:Ferrar's case, Sir T. Raym.   84. Foster,   371 Salk. 646 2 Hale P C 295. Foster, 22 *to* 40 Comb. 401 Kelynge,26— 53. State trials, vol. 710— 827.  Leach, 443.  Doctor and Student, Dial 2. 2 b. 52  Leach, 618.

*peculiar circumstances of the case.* There is no alterna-
tive: either the court must determine when it is requisite
to discharge, or the rule must be inflexible, that after the
jury are once sworn, no other jury can, in any court, be
sworn and charged in the same cause. The moment cases
of necessity are admitted to form exceptions, that moment
a door is opened to the discretion of the court to judge of
that necessity, and to determine what combination of cir-
cumstances will create one." The learned judge inveighs
with force and eloquence against the monstrous doctrine,
of compelling a jury to an unanimity, by the pains of hun-
ger and fatigue, so that the verdict is not founded on
temperate discussions, but on strength of body.

" Although the case of the People v. Olcott was a case of
misdemeanor, the reasoning is, in my judgment, entirely
applicable to cases of felony ; and although the opinion
was confined to the case under consideration, a perusal of
it will show that it embraces every possible case of a trial
for crimes. The opinion was delivered in 1801, and since
then this question has come under consideration in several
cases. In the case of the King v. Edwards, 4 Taunt. 307.
the indictment was for a felony; and while the prosecutor
was giving his evidence, one of the jurors fell down in a
fit; and he was pronounced by a physician, on oath inca-
pable of performing his duty as a juryman that day, where-
upon the jury was discharged, and a new jury sworn, and
the defendant was convicted. The point whether the
prisoner could be tried after the discharge of the jury,
without his consent, was argued before the judges of
England, except Mansfield, Chief Justice, and Lawrence,
Justice ; all the cases were cited, and the judges, without
hearing the counsel for the crown said, that it had been
decided in so many cases, it was now the settled law of the
country, and gave judgment against the prisoner.

NEW YORK, "The same course was adopted upon nearly the same state of facts in Anne Scalbert's case, Leach C. L. 700. and in the case of the King v. Stevens, Leach C. L. 618. the prisoner fell down in a fit during the trial, and the jury was discharged ; and upon his recovery he was tried and convicted by another jury. In the case of the United States v. Cooledge, 2 Gallison, p. 364. a witness refused to be sworn ; the trial was suspended during the imprisonment of witness for the contempt, and Mr. Justice Story held, that the discretion to discharge a jury existed in all cases, but that it was to be exercised only in very extraordinary and striking circumstances. And in the case of the Commonwealth v. Bowdoin, 9 Mass. Rep. p. 494., upon an indictment for highway robbery, the jury, after a full hearing of the case, being confined together during part of the day and a whole night, returned into court and informed the judge they had not agreed on a verdict, and it was not probable they ever would agree ; whereupon one of the jurors was withdrawn from the panel without the defendant's consent, and the jury was discharged, and during the same term another jury was empanelled for his trial, and he was found guilty. On a motion in arrest of judgment, the court refused the motion, saying, that the ancient strictness of the law upon this subject had very much abated in the English courts ; that it would neither be consistent with the genius of our government or laws to use compulsory means to effect an agreement among jurors ; that the practice of withdrawing a juror, when there existed no prospect of a verdict, had frequently been adopted in criminal trials in that court.

The power to discharge a jury in a criminal case is a delicate and highly important trust, and extends as well to felonies as misdemeanors.

"Upon a full consideration, I am of opinion, that although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in cases of extreme and absolute necessity ; and that it may be exercised without

operating as an acquittal of the defendant; that it extends NEW-YORK,

See Emlyne's
as well to felonies as misdemeanors, and that it exists and
may discreetly be exercised in cases where the jury from Preface to
the length of time they have been considering a case, and State Trials, p. 6, 7. The
their inability to agree, may fairly be presumed as never People v. Den
likely to agree, unless compelled so to do from the pressing ton, 7 Johns. Cases, 276.
calls of famine or bodily exhaustion. In the present case The People, v. Olcott, ibid.
considering the great length of time the jury had been 301.
out, and that the period for which the court could legally
sit as nearly terminated, and that it was morally certain
the jury could not agree before the court must adjourn,
I think the exercise of the power was discreet and legal.
" Much stress has been placed on the fact, that the defendant
was in jeopardy during the time the jury were deliberating.
It is true that his situation was critical ; and there was
danger, as regards him, that the jury might agree on a
verdict of guilty ; but in a legal sense he was not in jeop-
ardy, so that it would exonerate him from another trial.
He has not been tried for the offence imputed to him :
to render the trial complete and perfect, there should have
been a verdict either for or against ;him. A literal ob-
servance of the constitutional provision would extend to
embrace those cases where, by the visitation of God, one of
the jurors should die or become utterly unable to proceed
in the trial. It would extend also to a case where the de-
fendant should be seized with a fit, and become incapable
of attending to his defence; and it would extend to a case
where the jury was necessarily discharged in consequence
of the termination of the powers of the court. In a legal
sense, therefore, the defendant is not once put in jeopardy
until the verdict of the jury is rendered against him. And
if for or against him, he can never be drawn in question
again for the same offence. And I entirely concur in re-
probating the proceeding of withdrawing a juror, and at-
tempting to subject a person to a second trial because the

NEW-YORK, public prosecutor was not prepared with his proofs. In the case of the People v. Barret & Ward, 2 Caines, 304. the court considered it equivalent to an acquittal.

"The only remaining inquiry is, whether the power of discharging the jury in this case could be exercised by the sessions.

"The court of General Sessions of the city of New York are clothed with the powers not entrusted to the General Sessions of any other county. It has the power to try for all crimes,(cases affecting life only excepted) in as full and complete a manner as any court of oyer and terminer and gaol delivery for the said city and county, can hear, determine, and adjudge the same. 2 Rev. Laws, p. 503.

"It is not necessary now to decide, whether the sessions in New-York, since the statute, can grant a new trial on the merits; but having as full and perfect a jurisdiction as the oyer and terminer and gaol delivery, excepting in cases of life, over all other crimes, no doubt can be entertained that they possess all the incidents appertaining to the power of trying for these offences ; and the right to discharge the jury, and the facts and circumstances of this . case, was an incident to the trial.

Discharge of the jury, and a new triel awarded. "And upon the whole, I am of opinion, that whenever in cases of felony 'a jury has deliberated so long upon a prisoner's case, as to preclude a reasonable expectation that they will agree in a verdict, without being compelled to do so from famine or exhaustion, that it becomes a case of necessity, and that they may be discharged, and the prisoner may be again tried.

In the present case we consider the discharge of the jury as a discreet exercise of the powers of that court, either on

'the ground that the jury had been kept together so long as NEW-YORK, to preclude all hope of their agreeing unless compelled by famine or exhaustion, or on the ground that the powers of the court were to terminate within a few minutes, and that it was morally certain the jury could not agree within that period, and this produced an absolute necessity for discharging them.

" In this opinion my brethren entirely concur ; and the consequence is, that Goodwin must be tried at the next sittings, and his recognizance, and that of his sureties, will be respited until the next January term.

Ruled accordingly."